1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BARBARA DAVIS, as Personal Representative
of the Estate of G.B., deceased,

Plaintiff,

v.

WASHINGTON STATE DEPARTMENT OF
SOCIAL AND HEALTH SERVICES;
JENNIFER STRUS, individually and in her
official capacity acting under the color of state
law; HEIDI KAAS, individually and in her
official capacity acting under the color of state
law; MELISSA KEHMEIER, individually and
in her official capacity acting under the color of
state law; JAMES DESMOND, individually and
in his official capacity acting under the color of
state law; CASSIE ANDERSON, individually
and in her official capacity acting under the
color of state law; BRINA CARRIGAN,
individually and in her official capacity acting
under the color of state law; MAGGIE
STEWART, individually and in her official
capacity acting under the color of state law;
LORI BLAKE, individually and in her official
capacity acting under the color of state law;
SHANNON SULLIVAN, individually and in
her official capacity acting under the color of
state law; SUSAN STEINER, individually and
in her official capacity acting under the color of
state law; CAMERON NORTON, individually
and in his official capacity acting under the
color of state law; SARAH OASE, individually

NO.   3:16-cv-05783

**COMPLAINT**

COMPLAINT - 1

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

and in her official capacity acting under the color of state law; RANA PULLOM, individually and in her official capacity acting under the color of state law; DONALD WILLIAMS, individually and in his official capacity acting under the color of state law; CHRIS MEJIA, individually and in his official capacity acting under the color of state law; RIVERSIDE SCHOOL DISTRICT NO. 416, a Municipal Corporation duly organized and existing under the laws of Washington State; JUANITA MURRAY, individually and in her official capacity acting under the color of state law; ROBERTA KRAMER, individually and in her official capacity acting under the color of state law; SARAH RAMSDEN, individually and in her official capacity acting under the color of state law; CAROLINE RAYMOND, individually and in her official capacity acting under the color of state law; CHERI MCQUESTEN, individually and in her official capacity acting under the color of state law; SARAH RAMSEY, individually and in her official capacity acting under the color of state law; TAMI BOONE, individually and in her official capacity acting under the color of state law; MELISSA REED, individually and in her official capacity acting under the color of state law; ANN STOPAR, individually and in her official capacity acting under the color of state law; KRISTINA GRIFFITH, individually and in her official capacity acting under the color of state law; WENDY SUPANCHICK, individually and in her official capacity acting under the color of state law; SHERRY DORNQUAST, individually and in her official capacity acting under the color of state law; GARY VANDERHOLM, individually and in his official capacity acting under the color of state law; ROGER PRATT, individually and in his official capacity acting under the color of state law; CHRIS NIEUWENHUIS, individually and in his official capacity acting under the color of state law; and JOHN DOES 1-50, individually and in their official capacities acting under the color of state law,

Defendants.

COMPLAINT - 2

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

The above-named Plaintiff, by and through her attorneys of record, Gabriel S. Galanda and Ryan D. Dreveskracht, of Galanda Broadman, PLLC, alleges as follows:

## I.     PARTIES

1.     Plaintiff is informed and believes, and thus alleges, that each of the below Defendants are responsible for the pattern and practice of events herein alleged, or are necessary parties for obtaining appropriate relief.  In performing each of the acts alleged herein and below, and in their failure to fulfill their legal responsibilities set forth below, each Defendant acted jointly or individually as agents for each other and for all other Defendants.  The injuries and damages inflicted upon Plaintiff were caused by the acts and omissions of the Defendants.

## II.     DSHS DEFENDANTS

2.     Defendant WASHINGTON STATE DEPARTMENT OF SOCIAL AND HEALTH SERVICES ("DSHS") is a governmental entity of the State of Washington.  At all times material to this action, DSHS was charged with the responsibility to appropriately assess, screen, and reject unsuitable guardians; provide competent case management; respond to and adequately investigate allegations of abuse, neglect, exploitation, and/or abandonment; comply with internal policies, administrative code provisions, and legal standards; and otherwise ensure protection and safety of children who are in its care and custody and/or are the alleged victims of child abuse.

3.     Defendant JENNIFER STRUS is a resident of the State of Washington and an employee of Defendant DSHS.  Defendant Strus was the supervisor and/or policymaker of DSHS social workers acting as G.B.'s social worker at all times material to this complaint. Defendant Strus was negligent and deliberately indifferent to the depravation of G.B.'s constitutional rights.  Defendant Strus had knowledge that DSHS policies would cause injuries to

COMPLAINT - 3

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

1    children such as G.B., who are in the care and supervision of DSHS—because it has happened

2    numerous times—but has maintained these policies nonetheless.

3         4.    Defendant HEIDI KAAS is a resident of the State of Washington and an

4    employee of Defendant DSHS.  Defendant Kaas acted as G.B.'s social worker at all times

5    material to this complaint.  Defendant Kaas was negligent and deliberately indifferent to the

6    depravation of G.B.'s constitutional rights.    Defendant Kass failed to conduct requisite

7    supervisory visits and welfare checks, then lied about it, and G.B. died as a result.

8         5.    Defendant MELISSA KEHMEIER is a resident of the State of Washington and an

9    employee of Defendant DSHS.  Defendant Kehmeier acted as G.B.'s social worker and/or

10   supervisor and/or policymaker of DSHS social workers acting as G.B.'s social worker at all

11   times material to this complaint.  Defendant Kehmeier was negligent and deliberately indifferent

12   to the depravation of G.B.'s constitutional rights.

13        6.    Defendant JAMES DESMOND is a resident of the State of Washington and an

14   employee of Defendant DSHS.  Defendant Desmond acted as G.B.'s social worker at all times

15   material to this complaint.  Defendant Desmond was negligent and deliberately indifferent to the

16   depravation of G.B.'s constitutional rights.

17        7.    Defendant CASSIE ANDERSON is a resident of the State of Washington and an

18   employee of Defendant DSHS.  Defendant Anderson acted as G.B.'s social worker at all times

19   material to this complaint.  Defendant Anderson was negligent and deliberately indifferent to the

20   depravation of G.B.'s constitutional rights.

21        8.    Defendant BRINA CARRIGAN is a resident of the State of Washington and an

22   employee of Defendant DSHS.  Defendant Carrigan acted as G.B.'s social worker at all times

23   material to this complaint.  Defendant Carrigan was negligent and deliberately indifferent to the

24   depravation of G.B.'s constitutional rights.

25

COMPLAINT - 4

9. Defendant MAGGIE STEWART is a resident of the State of Washington and an employee of Defendant DSHS. Defendant Stewart acted as G.B.'s social worker at all times material to this complaint. Defendant Carrigan was negligent and deliberately indifferent to the depravation of G.B.'s constitutional rights.

10. Defendant LORI BLAKE is a resident of the State of Washington and an employee of Defendant DSHS. Defendant Blake acted as G.B.'s social worker at all times material to this complaint. Defendant Blake was negligent and deliberately indifferent to the depravation of G.B.'s constitutional rights.

11. Defendant SHANNON SULLIVAN is a resident of the State of Washington and an employee of Defendant DSHS. Defendant Sullivan acted as G.B.'s social worker and/or supervisor and/or policymaker of DSHS social workers acting as G.B.'s social worker at all times material to this complaint. Defendant Sullivan was negligent and deliberately indifferent to the depravation of G.B.'s constitutional rights.

12. Defendant SUSAN STEINER is a resident of the State of Washington and an employee of Defendant DSHS. Defendant Steiner acted as G.B.'s social worker and/or supervisor and/or policymaker of DSHS social workers acting as G.B.'s social worker at all times material to this complaint. Defendant Steiner was negligent and deliberately indifferent to the depravation of G.B.'s constitutional rights.

13. Defendant CAMERON NORTON is a resident of the State of Washington and an employee of Defendant DSHS. Defendant Norton acted as G.B.'s social worker and/or supervisor and/or policymaker of DSHS social workers acting as G.B.'s social worker at all times material to this complaint. Defendant Norton was negligent and deliberately indifferent to the depravation of G.B.'s constitutional rights.

COMPLAINT - 5

14.     Defendant SARAH OASE is a resident of the State of Washington and an employee of Defendant DSHS.  Defendant Oase acted as G.B.'s social worker at all times material to this complaint.  Defendant Oase was negligent and deliberately indifferent to the depravation of G.B.'s constitutional rights.

15.     Defendant RANA PULLOM is a resident of the State of Washington and an employee of Defendant DSHS.  Defendant Pullom acted as G.B.'s social worker at all times material to this complaint.  Defendant Pullom was negligent and deliberately indifferent to the depravation of G.B.'s constitutional rights.

16.     Defendant DONALD WILLIAMS is a resident of the State of Washington and an employee of Defendant DSHS.  Defendant Williams acted as G.B.'s social worker at all times material to this complaint.  Defendant Williams was negligent and deliberately indifferent to the depravation of G.B.'s constitutional rights.

17.     Defendant CHRIS MEJIA is a resident of the State of Washington and an employee of Defendant DSHS.  Defendant Mejia acted as G.B.'s social worker at all times material to this complaint.  Defendant Mejia was negligent and deliberately indifferent to the depravation of G.B.'s constitutional rights

18.     When not otherwise specified, the term "DSHS Defendants" shall refer, collectively, to Defendants Strus, Kaas, Kehmeier, Desmond, Anderson, Carrigan, Stewart, Blake, Sullivan, Steiner, Norton, Oase, Pullom, Williams, and Mejia.

### III.     SCHOOL DISTRICT DEFENDANTS

19.     Defendant RIVERSIDE SCHOOL DISTRICT NO. 416 ("Riverside") is a Municipal Corporation duly organized and existing under the laws of Washington State, operating in Spokane County, Washington.  Defendant Riverside owns and operates a number of public elementary and secondary schools within Spokane County, Washington, including the

COMPLAINT - 6

Chattaroy Elementary School ("Chattaroy") that G.B. attended.  At all times material to the allegations set forth herein and below, Riverside was the local education agency responsible for providing safe public education programs and activities to children and adolescents residing within its geographical boundaries, in compliance with the requirements of applicable federal and state laws.

20.     Defendant JUANITA MURRAY is a resident of the State of Washington and an employee of Defendant Riverside.  Defendant Murray was the supervisor and/or policymaker for Chattaroy employees who engaged with G.B. at all times material to this complaint.  Defendant Murray was negligent and deliberately indifferent to the depravation of G.B.'s constitutional rights.  Defendant Murray had knowledge that Chattaroy policies would cause injuries to children such as G.B., who are in the care and supervision of Chattaroy, but maintained those policies nonetheless.  Defendant Murray maintained these policies in violation of express law.  In addition, Defendant Murray herself failed to report suspected abuse to Defendant DSHS, as required by law, and was further negligent and deliberately indifferent to G.B.'s safety and wellbeing by her failure to act.

21.     Defendant ROBERTA KRAMER is a resident of the State of Washington and was, at all times relevant to this Complaint, Superintendent of Defendant Riverside's Board of Directors.  Defendant Kramer was the supervisor and/or policymaker for Riverside employees who engaged with G.B. at all times material to this complaint.  Defendant Kramer also was responsible for the approval of all hiring decisions within Riverside and accountable for the supervision, training, and oversight of Riverside employees, including the individually-named Riverside Defendants herein. Defendant Kramer was negligent and deliberately indifferent to the depravation of G.B.'s constitutional rights.  Defendant Kramer had knowledge that Riverside's policies would cause injuries to children such as G.B., who are in the care and supervision of

COMPLAINT - 7

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

1    Riverside, but maintained those policies nonetheless.   Defendant Kramer maintained these

2    policies in violation of express law.    In addition, Defendant Kramer herself failed to report

3    suspected abuse to Defendant DSHS, as required by law, and was further negligent and

4    deliberately indifferent to G.B.'s safety and wellbeing by her failure to act.

5         22.     Defendant CHRIS NIEUWENHUIS is a resident of the State of Washington and

6    was, at all times relevant to this Complaint, chair of Defendant Riverside's Board of Directors.

7    Defendant Nieuwenhuis was the supervisor and/or policymaker for Riverside employees who

8    engaged with G.B. at all times material to this complaint.   Defendant Nieuwenhuis also was

9    responsible for the approval of all hiring decisions within Riverside and accountable for the

10    supervision, training, and oversight of Riverside employees, including the individually-named

11    Riverside Defendants herein. Defendant Nieuwenhuis was negligent and deliberately indifferent

12    to the depravation of G.B.'s constitutional rights.   Defendant Nieuwenhuis had knowledge that

13    Riverside's policies would cause injuries to children such as G.B., who are in the care and

14    supervision of Riverside, but maintained those policies nonetheless.   Defendant Nieuwenhuis

15    maintained these policies in violation of express law.

16         23.     Defendant ROGER PRATT is a resident of the State of Washington and was, at

17    all times relevant to this Complaint, vice-chair of Defendant Riverside's Board of Directors.

18    Defendant Pratt was the supervisor and/or policymaker for Riverside employees who engaged

19    with G.B. at all times material to this complaint.   Defendant Pratt also was responsible for the

20    approval of all hiring decisions within Riverside and accountable for the supervision, training,

21    and oversight of Riverside employees, including the individually-named Riverside Defendants

22    herein.   Defendant Pratt was negligent and deliberately indifferent to the depravation of G.B.'s

23    constitutional rights.   Defendant Pratt had knowledge that Riverside's policies would cause

24    injuries to children such as G.B., who are in the care and supervision of Riverside, but

25

COMPLAINT - 8

1  maintained those policies nonetheless. Defendant Pratt maintained these policies in violation of

2  express law.

3      24.    Defendant GARY VANDERHOLM is a resident of the State of Washington and

4  was, at all times relevant to this Complaint, a member of Defendant Riverside's Board of

5  Directors. Defendant Vanderholm was the supervisor and/or policymaker for Riverside

6  employees who engaged with G.B. at all times material to this complaint. Defendant

7  Vanderholm also was responsible for the approval of all hiring decisions within Riverside and

8  accountable for the supervision, training, and oversight of Riverside employees, including the

9  individually-named Riverside Defendants herein. Defendant Vanderholm was negligent and

10 deliberately indifferent to the depravation of G.B.'s constitutional rights. Defendant Vanderholm

11 had knowledge that Riverside's policies would cause injuries to children such as G.B., who are

12 in the care and supervision of Riverside, but maintained those policies nonetheless. Defendant

13 Vanderholm maintained these policies in violation of express law.

14     25.    Defendant SHERRY DORNQUAST is a resident of the State of Washington and

15 an employee of Defendant Riverside. Defendant Dornquast was negligent and deliberately

16 indifferent to the depravation of G.B.'s constitutional rights. Defendant Dornquast also acted in

17 violation of express reporting statutes.

18     26.    Defendant WENDY SUPANCHICK is a resident of the State of Washington and

19 an employee of Defendant Riverside. Defendant Supanchick is a nurse at Chattaroy.

20 Supanchick was negligent and deliberately indifferent to the depravation of G.B.'s constitutional

21 rights. Defendant Supanchick also acted in violation of express reporting statutes.

22     27.    Defendant KRISTINA GRIFFITH is a resident of the State of Washington and an

23 employee of Defendant Riverside. Defendant Griffith was negligent and deliberately indifferent

24

25

COMPLAINT - 9

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

to the depravation of G.B.'s constitutional rights.  Defendant Griffith also acted in violation of express reporting statutes.

28.     Defendant ANN STOPAR is a resident of the State of Washington and an employee of Defendant Riverside.  Defendant Stopar was negligent and deliberately indifferent to the depravation of G.B.'s constitutional rights.  Defendant Stopar also acted in violation of express reporting statutes.

29.     Defendant MELISSA REED is a resident of the State of Washington and an employee of Defendant Riverside.  Defendant Reed was negligent and deliberately indifferent to the depravation of G.B.'s constitutional rights.  Defendant Reed also acted in violation of express reporting statutes.

30.     Defendant TAMI BOONE is a resident of the State of Washington and an employee of Defendant Riverside.  Defendant Boone was negligent and deliberately indifferent to the depravation of G.B.'s constitutional rights.  Defendant Boone also acted in violation of express reporting statutes.

31.     Defendant SARAH RAMSEY is a resident of the State of Washington and an employee of Defendant Riverside.  Defendant Ramsey was negligent and deliberately indifferent to the depravation of G.B.'s constitutional rights.  Defendant Ramsey also acted in violation of express reporting statutes.

32.     Defendant CHERI MCQUESTEN is a resident of the State of Washington and an employee of Defendant Riverside.  Defendant McQuesten was negligent and deliberately indifferent to the depravation of G.B.'s constitutional rights.  Defendant McQuesten also acted in violation of express reporting statutes.

33.     Defendant CAROLINE RAYMOND is a resident of the State of Washington and an employee of Defendant Riverside.  Defendant Raymond was negligent and deliberately

COMPLAINT - 10

Galanda Broadman PLLC
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

1   indifferent to the depravation of G.B.'s constitutional rights.  Defendant Raymond also acted in

2   violation of express reporting statutes.

3       34.   Defendant SARAH RAMSDEN is a resident of the State of Washington and an

4   employee of Defendant Riverside.   Defendant Ramsden was negligent and deliberately

5   indifferent to the depravation of G.B.'s constitutional rights.  Defendant Ramsden also acted in

6   violation of express reporting statutes.

7       35.   When not otherwise specified, the term "School District Defendants" shall refer

8   collectively to Defendants Murray, Kramer, Nieuwenhuis, Pratt, Vanderholm, Dornquast,

9   Spanchick, Griffith, Stopar, Reed, Boone, Ramsey, McQuesten, Raymond, and Ramsden.

10   **IV.   DEFENDANTS DOE**

11       36.   Defendants JOHN DOES 1 - 50 (hereinafter "Defendants Doe") are

12   subcontractors, employees, and/or agents of Defendants.  Each Defendant Doe was within the

13   scope of his/her employment at all times relevant hereto.  Each Defendant Doe was deliberately

14   indifferent and was negligent; acted in furtherance of an official and/or de facto policy or

15   procedure of deliberate indifference and negligence; and/or was responsible for the promulgation

16   of the policies and procedures and permitted the customs/practices pursuant to which the acts

17   alleged herein were committed.  Their identities are unknown at this time and will be named as

18   discovery progresses.

19   **V.   PLAINTIFF**

20       37.   Plaintiff BARBARA DAVIS is the duly appointed Personal Representative of the

21   Estate of her grandson, G.B.  Plaintiff brings all claims available to the Estate of G.B. and all

22   beneficiaries under state and federal law.

23   **VI.   JURISDICTION AND VENUE**

24       38.   This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

25

COMPLAINT - 11

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

39.     Venue is proper in the Western District of Washington pursuant to 28 U.S.C. § 1391 because Defendants are situated in this judicial district and because a substantial portion of the events and omissions giving rise to this claim occurred in Clallam and Thurston Counties, Washington, within the Western District of Washington.

## VII.   STATUTORY COMPLIANCE

40.     On February 8, 2016, Plaintiff filed an administrative claim for damages with Mason County and has satisfied the prerequisites to the maintenance of this action per Wash. Rev. Code § 4.96.020.

## VIII.   INTRODUCTION

41.     G.B.'s story is tragic.

42.     G.B., an enrolled member of the Hoh Indian Tribe, was born on October 24, 2009, in Port Angeles, Washington.

43.     G.B.'s father, Gary Blanton Jr., was murdered on June 2, 2012.

44.     The murder was unprovoked and violent:

On the night of June 2, 2012, Gary Blanton was playing World of Warcraft on his desktop computer.  Blanton's dog sat nearby while he fought monsters and embarked on quests in his gray plaid pajama bottoms.  While Blanton was immersed in his game, [the murderer] slipped out of the house and cut the power.  Blanton was wearing a headset that let him speak with other players and [the murderer] didn't want anyone online to hear what was about to happen.  Calming himself, [the murderer] pulled out a 9 mm pistol and charged inside.  He hadn't thought about how hard it would be to hit Blanton in the dark and emptied the first magazine wildly into the blackness before realizing he'd need another.  He dashed to get an extra from his car and to nab a flashlight.  When he re-entered, Blanton, riddled with bullets, was on his cell phone.  "Help, 9-1-1 I'm being shot," Blanton managed to say before the line went dead.  Drum shone the light on Blanton's head and kept shooting.

Lexi Pandell, *The Vigilante of Clallam County*, THE ATLANTIC (Dec. 4, 2013) http://www.theatlantic.com/national/archive/2013/12/the-vigilante-of-clallam-county/281968.

COMPLAINT - 12

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

45.    After her husband's murder, G.B.'s mother, Leslie Blanton, struggled psychologically.

46.    On July 26, 2014, Ms. Blanton suffered a fatal heart attack, which was believed to be drug related.

47.    Orphaned, G.B. and his siblings became dependents of the State of Washington.

48.    Defendant DSHS eventually transported G.B. and his siblings from Port Angeles to Spokane, where the children were placed in the care of a distant relative, Cynthia Khaleel ("Khaleel"), in August of 2014.

49.    The children began attending school at Chattaroy, operated by Defendant Riverside.

50.    G.B. qualified for special education at Chattaroy because he suffered from developmental delays in his cognitive, communication, social/emotional, and adaptive skills.  He "require[d] supervision constantly."

51.    At times, employees at Defendant Riverside made reports of abuse to Defendant DSHS, which were not responded to appropriately or adequately.  At other times Defendant Riverside and its School District Defendants failed to report G.B.'s abuse.

52.    On the morning of April 17, 2015, emergency medical providers arrived at the Khaleel residence and discovered G.B. in an unresponsive state.

53.    Upon his arrival at Sacred Heart Medical Center, medical staff discovered multiple skull fractures and traumatic injuries to G.B.'s brain, including extensive swelling of soft tissue, cytotoxic edema throughout the right cerebral hemisphere and left frontal lobe, subdural hematoma in the right frontal lobe, and scattered areas of hemorrhage in the right and left temporal lobes.

COMPLAINT - 13

54.     Medical staff examined G.B. later that evening, and observed a worsening cerebral edema and evolving widespread infracts, stable subdural hematomas, and a worsening midline shift.

55.     G.B. was not expected to survive.

56.     G.B. was pronounced brain dead and removed from life support measures on April 18, 2015.  He was only five years old.

57.     The Spokane County Medical Examiner determined that G.B.'s cause of death was blunt force head injury, and ruled his death a homicide.

58.     G.B. had sustained multiple traumas including an abdominal injury that was the result of a deep penetrating force.

59.     The complexity and severity of the head injuries suggested a very severe blow that would have caused immediate concussion.

60.     After investigating G.B.'s death, Spokane County Sheriff's Department arrested Khaleel on July 16, 2015, and charged her with second-degree murder.

61.     The day before he was beaten to death, numerous Riverside employees noticed bruising on G.B.'s face and head, which he said were hurting.  When asked where the bruising came from, G.B. replied, "my mommy punched me."  This incident was not reported.

62.     Agencies and persons tasked with childcare and/or supervision may not needlessly put children in risk of harm.  If they do, and a child is injured or dies, the child and/or his or her family is entitled to full compensation for the harms and losses caused.

63.     Here, because Defendants, each of them, violated this safety rule in numerous instances, G.B. was severely injured and died as a result.

64.     G.B. was only five years old when his life was cut short at the hands of someone that he trusted.  DSHS Defendants knew that Khaleel would abuse G.B., but they placed him in

COMPLAINT - 14

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

her home anyway.  School District Defendants knew that G.B. was being abused, but they ignored it.  G.B.'s blood is on Defendants' hands.  He was beaten to death because they chose not to do their jobs.

65.    Plaintiff is entitled to be compensated for the harms and losses that the Defendants have caused.

## IX.    FACTS RELEVANT TO DSHS DEFENDANTS

66.    After G.B.'s mother died in 2014, G.B. became a dependent of Washington State.

67.    Hoping to cash in on this, Cynthia Khaleel—G.B.'s paternal aunt—expressed a desire to have G.B. and his siblings placed in her home.

68.    Defendant DSHS Port Angeles **immediately**—no questions asked—granted guardianship of G.B. and G.B.'s younger brother, who has downs syndrome, to Khaleel.

69.    Defendant DSHS failed to conduct a home study prior to placing G.B. and his sibling in the Khaleel home.

70.    Khaleel was an unemployed single mother, raising three children of her own when DSHS placed G.B. and G.B.'s younger bother—both developmentally delayed disabled children—with Khaleel.

71.    Khaleel had a DSHS documented history of neglecting and/or abusing her own children or children in her care.

72.    On April 28, 2008, it was reported to Defendant DSHS that Khaleel's 2-year old son was found walking down the middle of the street in pajamas and no shoes.  Khaleel did not know her son was missing.  She slammed the door on the person who returned the child.  It was reported that there were numerous hazardous materials accessible to the child.  When confronted with this, Khaleel told DSHS that she is "a good mom" because she "doesn't beat her child."

COMPLAINT - 15

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

73.     On November 6, 2013, it was reported to Defendant DSHS that Khaleel dropped or otherwise allowed a 2-year old child to fall from a third story window.  Khaleel told numerous contradictory stories as to how and where the incident occurred.  The child suffered from contusions on her face, torso, and back; a fractured skull; and a torn lung.

74.     Khaleel also had a DSHS documented history of neglecting and/or abusing G.B.

75.     On April 7, 2014, it was reported to Defendant DSHS that while in the care and custody of Khaleel, G.B. sustained a bump and bruising on his head.

76.     On July 17, 2014, Defendant Sarah Oase conducted a case review in regard to Khaleel's adoption.  Defendant Oase knew of these prior incidents of abuse and neglect, but she ignored them and was otherwise negligent in caring for G.B.

77.     The assigned worker from the DSHS Port Angeles office, Defendant Heidi Kaas, reported that she had conducted in person monthly health and safety visits, as required by Defendant DSHS, with G.B. and Khaleel in September, October, and November of 2014.  She reported that during these visits she found "no concerns with t[he] placement" of G.B. and his siblings with Khaleel.

78.     This worker's documentation was false.  Due to "incongruent activities" that were recorded but that could not be reconciled, Defendant DSHS knew that this worker had falsified the documentation.  Defendant Kaas never visited the Khaleel home.

79.     At this time, there were "violent, sexual behavior allegations flying around" in regard to the Khaleel home that caused Clallam County Juvenile and Family Services to request the address and phone number of the Khaleel home "so she could ask her counterpart in [the] Spokane area to do some drop in visits."  It is unknown whether these visits occurred, but it is clear that Defendant DSHS never conducted them.

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

80.     On December 12, 2014, a Riverside employee reported to Defendant DSHS that G.B. had likely been abused by Khaleel.  This employee identified multiple bruises and scratches to G.B.'s face, cheeks, and forehead that were red and purple in color.

81.     This Riverside employee also reported that G.B. was left alone at a school Christmas program, and that G.B. was unable to protect himself from harm at this time, and that he should have never been left unattended.

82.     This employee also reported that other children in the Khaleel home were likely being abused.

83.     This employee also reported that Khaleel allowed G.B. to walk himself to the bus stop, followed by dangerous dogs.  The bus driver intervened, and reported the occurrences to the Riverside employee, who in turn reported this to Defendant DSHS.

84.     At intake, DSHS Spokane personnel discovered that G.B. had an active Port Angeles child welfare case—unknown to the Spokane office prior to this report—and notified that office.

85.     At intake it was also discovered by DSHS Spokane that Khaleel had prior CPS investigations.

86.     DSHS Spokane responded to the allegations reported on December 12, 2014, by the concerned school counselor.

87.     DSHS Spokane contacted DSHS Port Angeles to review the case, and raised concerns that neither a request for courtesy supervision nor a home study had been requested by Port Angeles prior to placement of G.B. and his sibling in the Khaleel home.

88.     DSHS personnel from the Spokane and Port Angeles Children's Administration offices recommended that DSHS initiate a home study and supervision out of the Spokane office of the Khaleel home.  This was never done.

COMPLAINT - 17

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

89.     On December 13, 2014, Defendant Pullom visited the Khaleel home and affirmed and documented the abuse to G.B (bruises to his face).

90.     On December 15, 2014, Defendant Carrigan called Defendant Kaas and inquired as to why there was no (1) home study or (2) courtesy supervisions being done for G.B.  Kaas admitted that these required steps were not taken, but that it was okay because "she never had any issues or concerns about" Khaleel—despite never visiting the Khaleel home.

91.     On December 16, 2014, a Riverside employee reported to DSHS that Khaleel was "overwhelmed" and "frazzled" and was not able to properly care for G.B.  The employee stated that she was concerned for G.B.'s safety because Khaleel was "like Dr. Jekyll and Mr. Hyde sometimes."

92.     Later on December 16, 2014, a Riverside employee reported to Defendant DSHS that G.B. was not at school, and that Khaleel was "hotter than a pistol" about the Riverside's report to DSHS.

93.     The Riverside employee also reported to DSHS that in Khaleel's care G.B. would often "smear[] feces on walls, bed, floor, and bathroom" and that Khaleel's children were "having a hard time accepting him."

94.     Also on December 16, 2014, DSHS spoke with a representative of the Hoh Tribe. Defendant DSHS notified the Tribe of its "concerns about the wellbeing of" G.B. and the likely abuse that was occurring.  DSHS knew that G.B. was being neglected and abused.

95.     During a December 17, 2014 home visit, a DSHS employee noted a red mark across G.B.'s hairline, a bruise on G.B.'s right eye, a cut across G.B.'s cheek, and a cut on the bridge of G.B.'s nose.

96.     The DSHS employee did not interview G.B. about his injuries.

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

1  97.   When interviewing Khaleel's children about G.B.'s injuries, one of the children

2  stated that Khaleel would often punish the children by hitting them in the face.

3  98.   On December 19, 2014, a DSHS employee spoke with a counselor from G.B.'s

4  school.  During this conversation, the DSHS employee was informed that G.B. had been abused

5  at home and that Khaleel had been violent and called the counselor a "fucking cunt" in front of

6  G.B.

7  99.   On December 23, 2014—despite these clear signs of abuse—Defendant DSHS

8  concluded that the reports of abuse were "unfounded" and closed the investigation.

9  100.   Defendant DSHS noted, however, that supportive services were needed for the

10  Khaleel home, but that that support would need to come from DSHS Port Angeles instead of

11  DSHS Spokane.

12  101.   Neither DSHS office ever provided the recommended supportive services.

13  102.   Despite these clear instances of abuse, Defendant DSHS failed to provide

14  courtesy supervision upon G.B.'s placement in the Khaleel home, as required by DSHS policy.

15  103.   The Port Angeles DSHS office also failed to notify the Spokane DSHS office, as

16  required by official DSHS policy, that G.B. and his sibling—both wards of Washington State—

17  had been placed in the Khaleel home.

18  104.   Port Angeles DSHS office and its employees with supervisory roles, as identified

19  above, had an established pattern and custom of consistently ignoring this DSHS policy.

20  105.   DSHS Spokane finally began courtesy supervision in mid January of 2015.

21  106.   On January 28, 2015, Defendant Desmond visited the Khaleel home and "noted

22  the strong smell of feces at the home."  Defendant Desomnd suggested that the smell was

23  coming from one of the children, and about 30 minutes later Khaleel's mother arrived and

24  changed the child's diaper.

25

COMPLAINT - 19

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

107.   On February 3, 2015, Defendant Desmond wrote to DSHS Port Angeles, expressing concerns as to Khaleel's neglect and abuse.

108.   In sum, Defendant Desmond documented numerous challenges facing Khaleel in attempting to parent five small children on her own—the children were being neglected and abused and both DSHS Spokane and DSHS Port Angeles, and their employees, knew about it.

109.   Defendant Desmond also expressed concern based on conflicting statements Khaleel had made concerning the status of her marriage, the parentage of her children, her history with DSHS, and her reliance on her extended family for support.

110.   Defendant Desmond also expressed concern that he was unable to locate documentation that the maternal grandparents, who had unsupervised access to G.B. and his sibling, had completed background checks.

111.   On February 17, 2015, a DSHS employee conducted a health and safety visit of the Khaleel home.  The DSHS employee noted:

> Reportedly [G.B.] and [his sibling] were brought here and placed with [Khaleel] by the Department in Port Angeles without notifying the local office until after the placement was made.  There is some ongoing confusion in regards to this case and the Port Angeles office maintains responsibility and jurisdiction. . . . I was at the [Khaleel] home for over two hours and it was chaotic. . . . [Khaleel] cannot keep up, the children are shuffled to a downstairs playroom while she is upstairs, and when I left [G.B.] and another young boy were outside with no adult supervision and no fenced yard. . . . There are a lot of issues and I have concerns . . . . I did report to my supervisor what I observed and we had a conference call with the social worker and supervisor from Port Angeles to report on our observations.

112.   In early March of 2015, Defendant Steiner, from DSHS Port Angeles, requested that DSHS Spokane conduct home study visits.  Defendant Figueroa attempted to conduct the visit, but was negligent and ultimately failed to do so.

113.   Defendant Figueroa was so unfamiliar with G.B. and his siblings' files, for instance, that she thought Khaleel was Leslie Blanton—G.B.'s long-deceased mother.  This

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

1   home study was never completed because of a "lack of responsiveness by Khaleel, which

2   impede[d] completion of the home study."

3       114.   DSHS Port Angeles, *i.e.* Defendant Steiner, was notified of these concerns, but

4   did nothing.

5       115.   **At some time between the evening of April 16 and the morning of April 17,**

6   **2015, Khaleel beat and otherwise abused G.B. until he died**.

7       116.   This was entirely preventable.  DSHS Defendants had been warned of abuse and

8   neglect to G.B. and his siblings occurring at the Khaleel home numerous times—by Riverside,

9   its employees, DSHS subcontractors, and even by DSHS employees—but took no steps to

10  prevent it.  This textbook example of deliberate indifference caused G.B.'s death.

11      117.   The placement of G.B. in the unlicensed Khaleel home was not conducted in

12  accordance with DSHS Children's Administration policy.

13      118.   Defendant DSHS's critical error was made in DSHS's relative placement process

14  regarding a home study.

15      119.   The request to evaluate the Khaleel home was not made in a timely manner.

16      120.   DSHS Children's Administration policy requires that a home study be completed

17  prior to placement, unless it is an emergency or urgent placement.   Khaleel moved to

18  Washington in July of 2014 and G.B. was not placed in the Khaleel home until two months later,

19  which indicates that it was not an emergency situation.

20      121.   Defendant DSHS had ample opportunity to more thoroughly assess the caregiver

21  prior to placement, but it did not.

22      122.   A timely and thorough home study would have raised questions about Khaleel's

23  character and suitability as placement for G.B. and prevented G.B.'s death.

24      123.   Another critical error occurred with regard to DSHS courtesy supervision.

25

COMPLAINT - 21

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

124.    When it is necessary for children to be placed outside of the jurisdiction of a local office—the Port Angeles office in this case—that office is required to notify the Children's Administration office that services the area of the proposed placement in advance and request courtesy supervision.

125.    Here, courtesy supervision was not requested on this case until G.B. had resided at the Khaleel residence in the Spokane area for over four months.

126.    Had Defendant DSHS conducted the required courtesy supervision, questions about Khaleel's character and suitability for G.B.'s placement  would have been raised and G.B. would have been removed from the Khaleel home.

127.    The documentation of the health and safety monitoring visits by the assigned DSHS Port Angeles social worker were not made in accordance with DSHS Children's Administration policy.  Specifically, Children's Administration policy requires an initial health and safety visit within seven days of a child's placement.  This did not occur.

128.    Further, health and safety visits are to be conducted monthly and with the majority of the contacts occurring in the child's placement home.  This likewise did not occur.

129.    Proper clinical supervision was not conducted by Defendant DSHS.  There was no substantive or documented discussion regarding following through on service recommendations, provision of support services for G.B. and Khaleel, or ongoing management of risk and safety.

130.    Defendant DSHS displayed deliberate indifference and negligence when DSHS Port Angeles worker Kaas knew Khaleel had a history of CPS incidents and also was a single mother with multiple children and limited resources, and still refused to conduct a home study, arrange for courtesy supervision, and conduct regular health and safety visits—instead forging false documentation for G.B.'s file.

COMPLAINT - 22

131.    Defendant DSHS further displayed deliberate indifference and negligence when the DSHS Spokane office initiated courtesy supervision in early 2015, noting that Khaleel's household was chaotic and she was struggling to provide for six small children, and failed to act in G.B.'s interest.

132.    As a direct and proximate result of Defendant DSHS's deliberate indifference and negligence, as described above and in other respects as well, G.B. died a terrible and easily preventable death.

133.    G.B. is just one more instance of Defendant DSHS's continued failure to competently do its job.  CPS has paid over $141.4 million in recent years to children and estates of children who have been tortured, starved, and murdered because of DSHS's negligence and deliberate indifference.  Defendant DSHS knows that it is its responsibility to properly place and care for these children, but DSHS constantly fails.

134.    Defendant Strus knows that CPS employees cannot "do a good job investigating [abuse] complaint[s] fully" because of a "lack of staff" and "lack of resources."  These employees are juggling more than 25 cases at a time.  The national standard is 15.

135.    Defendant Strus knows that CPS employees fulfill their duties negligently and with deliberate indifference, but she does nothing about it.  DSHS employees behind these failures are rarely reprimanded.  Training is nonexistent.  DSHS employees continue to repeatedly ignore agency policy, and Defendant Strus continues to ignore their dereliction.

136.    Defendant DSHS has been mandated since 2012 to (1) reduce caseworker caseloads to 18:1; (2) make monthly health and safety visits to children in care; (3) inform caregivers of medical and other needs of foster children; (4) adequately address the needs of medically fragile youth; and (5) adequately train and support foster parents.  Defendant DSHS

COMPLAINT - 23

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

has knowingly, constantly, and consistently failed to comply with these requirements.  And G.B. and other children have been abused and died as a result.

137.   Defendant DSHS has also knowingly failed to implement the other aspects of the *Braam* Oversight Panel Professional Standards.

138.   DSHS Port Angeles employees were also deliberately indifferent to G.B.'s needs and negligent when they kept G.B. with Khaleel despite knowledge that G.B. was being abused and/or that G.B. likely to be abused.

139.   DSHS Port Angeles workers were inadequately trained and monitored, such lack of training and monitoring caused G.B.'s death, and that DSHS Port Angeles acted with deliberate indifference and negligence in disregarding the risk posed by the lack of any training and monitoring.

140.   Defendant DSHS failed to follow its own policies and procedures regarding the placement and supervision of G.B. at the Khaleel home. Defendant DSHS fell below the standard of care in the placement of G.B. at the Khaleel home and in conducting regular health and safety visits at the Khaleel home.

141.   Defendant DSHS fell below the standard of care in investigating the Chattaroy counselor's December 12, 2014 report of suspicious injuries to G.B.'s person.  G.B. died as a result of DSHS's negligent conduct.

142.   Each and every named and unnamed DSHS case manager was responsible for monitoring educational, medical, and mental health providers providing services for children placed in Khaleel's care.  Each and every named and unnamed DSHS case manager and social worker fell far below the standard of care in fulfilling this duty.

COMPLAINT - 24

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

143. Each and every named and unnamed DSHS employee was responsible for the care, custody, placement and supervision of children placed Khaleel's care. Each and every named and unnamed DSHS employee fell far below the standard of care in fulfilling this duty.

144. Each and every named and unnamed DSHS case worker was charged with monitoring G.B., including an ongoing assessment of his needs, including educational, medical, and mental health. Each and every named and unnamed DSHS case manager fell far below the standard of care in fulfilling this duty.

145. Defendant DSHS was responsible for establishing the duties and responsibilities of employees of DSHS.

146. Defendant DSHS was responsible for the supervision and training of DSHS employees.

147. Defendant DSHS was responsible for the supervision of DSHS employees' proper discharge of their duties.

148. Defendant DSHS was responsible for the implementation of uniform policies and procedures governing employees of DSHS.

149. Defendant DSHS was responsible for making and enforcing rules, regulations, and policies for the proper management of children placed in its care subject to DSHS's control, including G.B.

150. Defendant DSHS was responsible for ensuring the constitutional rights of children placed in its care to be free from unnecessary harm from abuse, including G.B.

151. Defendant DSHS and DSHS Defendants breached each of these duties.

152. Defendant DSHS is directy liable for the constitutional violations inflicted on G.B. in that the conduct complained of was DSHS's and the custom and practice of DSHS.

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

153.    Defendant DSHS maintains a custom and practice of failing to keep children free from harm.

154.    Defendant DSHS knew and approved of the unconstitutional misconduct by its employees in the (1) selection of inappropriate placement; (2) unlicensed placements; (3) inadequate services in family foster home care; (4) inadequate mandated reporting and services during care; (5) files failing to contain required documents; (6) policy of operation or procedure not being followed; (7) non-compliance concerning foster child's safety plan; and (8) non-compliance concerning required contact between DSHS and the child.

155.    Defendant DSHS, through the unconstitutional misconduct of its employees, which was known and approved by DSHS, maintained a custom and practice of failing to keep foster children from harm in that DSHS inappropriately placed and failed to provide adequate services for several foster children in DSHS's care, including G.B., resulting in documented physical harm to those children, including G.B.

156.    Defendant DSHS maintains a custom of providing inadequate placement services to foster children, including G.B., which is inconsistent with DSHS's written policy for the safety of foster children in DSHS's care.

157.    Defendant DSHS has a persistent and well-settled practice of unconstitutional misconduct by employees that was known and approved by DSHS.

158.    Defendant DSHS's custom and practice of inappropriate placement services resulted in harm and death to G.B.

159.    Defendant DSHS's inadequate placement services for many of the foster children, including G.B., placed in the care of DSHS have resulted in significant harm and death to these said children.

COMPLAINT - 26

160.    Each and every Defendant was negligent.  In addition, these repeated acts of negligence sound in deliberate indifference.  Further each and every Defendant was deliberately indifferent, independent of their negligence.

161.    Defendant DSHS's custom and practice of unconstitutional misconduct was maintained with knowledge that said actions would deprive G.B. and others of their constitutional of right to be free from harm.

162.    DSHS Defendants violated the right of G.B. not to be handed over by state officers to a custodian whom Defendants knew and/or suspected to be a child abuser.

163.    The claims of Plaintiff herein, and the related injuries and damages, were the proximate result of the acts and omissions caused by Defendants through their policies, practices, customs—including inadequate staffing, training, preparation, procedures, supervision, and discipline.

164.    DSHS Defendants' abdication of their duties toward G.B., as shown by their reckless indifference to the consequence of placing a very young, vulnerable child in the home of a known abusive woman, shocks the conscience.

165.    Each and every DSHS Defendant—named and unnamed, entity and person—has violated G.B.'s constitutional Fourteenth Amendment due process right to be free from harm and wrongful death from an abusive person.

166.    The aforesaid acts and omissions of Defendants deprived G.B. of his constitutional rights; directly caused and/or directly contributed to his pain, suffering, and a general decline of his quality of life; directly caused and/or directly contributed to cause his death; and directly caused and/or directly contributed to cause his family to suffer pecuniary losses.

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

167.    Prior to death, G.B. suffered extreme physical and mental pain, terror, anxiety, suffering, and emotional distress.

168.    G.B.'s death was completely unnecessary and could have been easily prevented via provision of even the most rudimentary supervision.

169.    Defendant DSHS has admitted this. Specifically, DSHS has admitted to committing "multiple practice deficits."

170.    In regard to Defendant Kaas—the DSHS employee who falsified documents and lied about supervising and monitoring G.B.'s placement— Defendant DSHS has admitted that the DSHS Defendants in Port Angeles with supervisory roles were aware of Kaas' negligence and deliberate indifference, and allowed it.

171.    DSHS has admitted that Port Angeles supervisors were aware that Defendant Kaas appeared to be enmeshed with Khaleel, exhibited confirmatory bias, and significantly relied on Khaleel as the primary source of information as to G.B.'s positive transition to his Spokane placement.

172.    DSHS has admitted that these conditions, along with the apparent distraction with legal conflicts between the foster parent of G.B.'s half sister and the Hoh Tribe regarding placement, may have contributed to Defendant Kaas' assertively pursuing relative placement when other information did not support such urgency to move the child.

173.    DSHS has admitted that, additionally, Port Angeles DSHS supervisors were aware that Kaas had a noted pattern of not meeting timelines for documentation and completion of work and was known to be difficult to supervise.

174.    DSHS has also admitted to "numerous policy violations" to have occurred in regard to DSHS' care in regard to G.B.'s care.

COMPLAINT - 28

175.    DSHS has also admitted that the placement of G.B. and his siblings in the un-licensed home of the paternal aunt was not conducted in accordance with DSHS policy, such that critical errors were made in the relative placement process.

176.    DSHS has also admitted that the request to evaluate Khaleel's home was not made in a tamely manner.  Policy requires that a home study be completed prior to placement. There was ample opportunity to more thoroughly assess the caregiver prior to placement and a timely and thorough home study may have raised questions about Khaleel's character and suitability as a placement for the children.

177.    When it is necessary for children to be placed outside of the jurisdiction of a local office, that office is to notify the DSHS office that services the area of the proposed placement in advance and request courtesy supervision.  DSHS has also admitted that Courtesy Supervision was not requested on this case until the children had been in the Spokane area for over four months, in violation of this policy

178.    DSHS has also admitted that documentation of the health and safety monitoring visits by Defendant Kaas did not appear to be in accordance with DHS policy.  Specifically, DSHS policy requires an initial health and safety visit within 7 days of the child's placement, and this does not appear to have occurred.  Further health and safety visits are to be conducted monthly with the majority of the contacts occurring in the child's home, and this did not appear to have occurred.

179.    DSHS has also admitted that supervisory reviews did not reflect clinical supervision in terms of documenting any substantive discussion regarding follow through on service recommendations, provision of support services for G.B. and his caregiver, or ongoing management of risk and safety.

COMPLAINT - 29

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

180.    The above statements are not intended to be a full and comprehensive description of all of the information known and/or reported to Defendant DSHS and the individual DSHS Defendants.

181.    The above factual statements are not intended to be a full description of the abuse suffered by, and harm inflicted upon, G.B.

## X.    FACTS RELEVANT TO SCHOOL DISTRICT DEFENDANTS

182.    School Districts, by and through the schools and employees that they manage and oversee, have a special relationship with the students in their care and custody.

183.    This special relationship creates a duty to protect students from reasonably anticipated dangers, since the placement of the student in the care of the school results in loss of the student's ability to protect himself or herself, and the protective custody of teachers is mandatorily substituted for that of the parent.

184.    One of the most important ways that School Districts protect students from harm is to report suspected abuse and/or neglect to Defendant DSHS.

185.    In fact, this type of reporting is statutorily mandated by RCW 26.44.030, which states, in relevant part:

> When any . . . professional school personnel . . . has reasonable cause to believe that a child has suffered abuse or neglect, he or she shall report such incident, or cause a report to be made, to the proper law enforcement agency or to [DSHS]. . . . The report must be made at the first opportunity, but in no case longer than forty-eight hours after there is reasonable cause to believe that the child has suffered abuse or neglect.

186.    Failure by professional school personnel to make such a report is a gross misdemeanor under RCW 26.44.08.

187.    RCW 26.44.030 creates an implied private right of action to recover for injuries caused by a professional school personnel's failure to report abuse.

COMPLAINT - 30

188.   School Districts are directly liable for the failure of an employee to report child abuse.

189.   The duty to report child abuse also is clearly within a School District employee's scope of employment such that School Districts are vicariously labile for an employee's failure to report.

190.   Individual School District employees also have a duty to take action that is necessary to prevent or stop the abuse once they learn of facts of suspected abuse or neglect. Failure to do so constitutes deliberate indifference toward the constitutional rights of the student.

191.   School Districts also have a duty to not implement or condone policies, customs, or established patterns of conduct that cause deliberate indifference toward the constitutional rights of the student.

192.   Defendant Riverside's official polices state that the School District's Superintendent—here, Defendant Kramer—must develop abuse and neglect "reporting procedures and provide them to staff on an annual basis" the purpose of which is "to identify and timely report all evidence of child abuse, neglect, or exploitation to the proper authorities." Defendant Kramer did not comply with this policy.  Instead, she implemented an informal policy of failing to train Riverside employees on proper identification and timely reporting.

193.   Defendant Riverside's official policies state that "[a]ll staff are responsible for reporting all suspected cases of child abuse, neglect, and exploitation to the proper authorities and/**or the appropriate school administrator**."   This official policy *per se* violates RCW 26.44.030 in that the employee has the option of not reporting the abuse to Defendant DSHS and instead reporting it to a school administrator.

194.   Indeed, Chattaroy had a policy of running suspected abuse reports through its "school administrator"—Defendant Murray or Tiffany Zuck, a Chattaroy councilor—who would

COMPLAINT - 31

then decide whether to call Defendant DSHS. Maintenance of this policy constitutes negligence and deliberate indifference on the part of Riverside and its School District employees with supervisory and managerial roles.

195.    Defendant Riverside's official policies state that "[w]hen there is reasonable cause to believe that a student has suffered abuse, neglect, or exploitation, staff or the principal will immediately contact [DSHS]." The term "immediately" is defined, however, as "within forty-eight (48) hours." This policy *per se* violates RCW 26.44.030, which requires that "[t]he report must be made at the first opportunity."

196.    This policy also *per se* violates RCW 26.44.030 by, again, running suspected abuse reports through its "principal"—Defendant Murray—who would then decide whether to call DSHS. Maintenance of this policy constitutes negligence and deliberate indifference on the part of Riverside and its School District employees with supervisory and managerial roles.

197.    As discussed below, these official Riverside policies caused G.B.'s death because they caused Riverside employees to (1) wait 48 hours to report abuse to DSHS, and (2) not report at all when Defendant Murray and Ms. Zuck were absent.

198.    G.B. began attending school at Chattaroy in August of 2014.

199.    On October 2, 2014, John Doe Riverside employees observed and documented a bruise on G.B.'s face. To any reasonable educator exercising professional care and skill this is an obvious sign of neglect that needed to be reported to DSHS. John Doe Riverside employees did not, however, report this to DSHS.

200.    On November 4, 2014, Defendants Griffin and Dornquast conducted an Adverse Intervention Plan, where it was noted that G.B. was frequently "engaging in aberrant behavior to gain attention"; "becom[ing] aggressive towards others"; "display[ing] aberrant behavior towards staff, including: hitting, kicking, biting, pushing, and throwing objects." G.B. displayed

COMPLAINT - 32

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

this behavior "during eating time when [G.B.] doesn't think he has enough food."  To any reasonable educator exercising professional care and skill this is an obvious sign of neglect that needed to be reported to DSHS.  Defendants Griffin and Dornquast did not, however, report this to DSHS.

201.   On November 18, 2014, Defendant Supanchick, the school nurse, was called to examine bruising on G.B.  Defendant Supanchick found that G.B. "presents w/ bruising on ears bilaterally.  He stated 'fell' then said 'Daddy + knuckles.'"  To any reasonable nurse exercising professional care and skill this is an obvious sign of abuse that needed to be reported to Defendant DSHS.  Defendant Supanchick did not, however, report this to Defendant DSHS.

202.   On November 20, 2014, Defendant Supanchick again observed bruising on G.B.'s hairline and left cheek.  To any reasonable nurse exercising professional care and skill this is an obvious sign of abuse that needed to be reported to Defendant DSHS.  Defendant Supanchick did not, however, report this to Defendant DSHS.

203.   On October 2, 2014, Defendants Dornquast, Griffith, Stopar, Reed, Boone, and Ramsey, all observed deep bruising on G.B.'s forehead that they suspected was from abuse.  Defendant Dornquast reported the bruising to Defendant Murray, who did not report the abuse to Defendant DSHS.  To any reasonable educator exercising professional care and skill this is an obvious sign of abuse that needed to be reported to Defendant DSHS.

204.   On October 16, 2014, Defendant Dornquast observed a burn across G.B.'s forehead that she suspected was from abuse.  Defendant Dornquast did not report the abuse to Defendant DSHS.  To any reasonable educator exercising professional care and skill this is an obvious sign of abuse that needed to be reported to Defendant DSHS.

205.   On November 20, 2014, Defendants Dornquast, Supanchick, Griffith, Stopar, Reed, McQuesten, and Boone observed deep bruising on G.B.'s left cheek, head, ears, and arm

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

that they suspected was from abuse.  Defendant Dornquast reported the bruising to Defendant Murray, who did not report the abuse to Defendant DSHS.    To any reasonable educator exercising professional care and skill this is an obvious sign of abuse that needed to be reported to Defendant DSHS.

206.   On December 11, 2014, Defendant Ramsden observed scratches and deep bruising on G.B.'s face.  Defendant Ramsden then reported this to Defendant Raymond. Defendant Ramsden also told Defendant Raymond that "the school nurse had followed up on some similar concerns last week" and that "other staff observed the situation" as well.  These Riverside employees then reported the signs of abuse to Ms. Zuck, who reported the abuse to Defendant DSHS.

207.   On December 17, 2014, Khaleel came to Chattaroy and verbally attacked Ms. Zuck for reporting G.B.'s abuse.  According to eyewitness accounts, Khaleel "was very vulgar and lashed out, calling [Ms. Zuck] a 'fucking cunt' several times while the children were in the room."  The next day, on December 18, 2014, Scott Streltzoff, a Riverside employee, reported this incident to the local police – Case No. 14-423338.

208.   On April 16, 2015, G.B. told Defendants Reed, Dornquast, and Stopar that his mom "punched him" and touched the middle of his forehead.  These Defendants did not report this direct cry for help to Defendant DSHS.   To any reasonable educator exercising professional care and skill this is an obvious sign of abuse that needed to be reported to Defendant DSHS.

209.   Later that night, G.B. was beaten to death.

210.   The next day, April 17, 2015, Defendant Dornquast found out that G.B. was gravely injured and would likely die.  Upset and crying, Defendant Dornquast admitted "[W]e didn't save this child!  Yesterday he told me that his mom punched him, but I didn't report it!"

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

211.    Defendant Dornquast "didn't report it" because, again, Chattaroy had a policy of running suspected abuse reports through its principal, Defendant Murray, or Ms. Zuck, who would then decide whether to call Defendant DSHS.  On this particular day, both Defendant Murray and Ms. Zuck were absent from Chattaroy.  So the abuse went unreported and G.B. died.

212.    According to Defendant Dornquast herself,

> [G.B.] told Melissa that his mom punched him and he touched the middle of his forehead, when she was on the rug with him.  Melissa told me, so I asked him what he said to Miss Melissa and He told me, "My mom punched me in the head and he pointed at the middle of his forehead." . . . Juanita Murray my director was out of town.  [*Sic*].

213.    Chattaroy also had a policy of not reporting suspected abuse if it would be "upsetting and very disruptive for the family."  Given Khaleel's responses to Riverside's initial report of abuse, Defendant Murray implemented this policy with regard to G.B.

214.    Defendant Murray specifically told Ms. Zuck, "we don't do that sort of thing around here" in response to Ms. Zuck's first report of abuse.

215.    Chattaroy also had a policy of waiting up to 48 hours before reporting abuse.

216.    These informal policies were implemented and maintained by Defendants Murray and Kramer and were known to each School District Defendant, who acquiesced to them.

217.    These Chattaroy policies were implemented in violation of RCW 26.44.030, which requires **the employee his or herself to make the report**, and to do so **"at the first opportunity."**

218.    School District Defendants also maintained a policy, custom, and established pattern of failing to develop administrative policies or afford training, supervision, or education for the identification, detection, reporting, and/or investigation of alleged or suspected incidents of abuse and other offensive and unconstitutional acts and misconduct, and failing to maintain an appropriate system of review of abuse and neglect claims.

COMPLAINT - 35

219.     School District Defendants knew—because it was obvious—that their policies for reporting abuse, training, supervising, and educating its employees in the detection, reporting, and/or investigation of alleged or suspected abuse and unconstitutional acts and misconduct was inadequate, put children at risk of harm, and were likely to result in the violation of constitutional rights.

220.     School District Defendants with supervisory and managerial roles, including those on Riverside's Board of Directors, had a duty to police the misconduct, negligence, practices, established patterns, and deliberate indifference of Riverside employees under their control and to protect students from violations of their bodily integrity and to be free from intrusions while attending a publically mandated course of education.

221.     School District Defendants with supervisory and managerial roles, including those on Riverside's Board of Directors, demonstrated a reckless, deliberately indifferent, and tacit authorization of the reoccurrence of the unconstitutional and offensive acts, policies, customs, and established patterns as described above.

222.     Defendant Riverside and School District Defendants with supervisory and managerial roles, including those on Riverside's Board of Directors, had immediate control over the remaining School District Defendants.

223.     The actions of each School District Defendant, and the policies of Defendant Riverside, written and unwritten, constitutes deliberate indifference to the federally protected rights of G.B.

224.     The above actions of Defendant Riverside and School District Defendants caused G.B. to suffer continued abuse, resulting in severe emotional distress, physical and mental pain and suffering, and death.

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

225.    Said failures to act—in the setting of a school, where the safety, protection, welfare, and education of America's youth should be paramount—was so outrageous as to go beyond all possible bounds of decency and were too extreme as to be considered atrocious and utterly intolerable in a civilized society.

226.    Defendant Riverside and School District Defendants with supervisory and managerial roles had a duty to police the conduct of Riverside employees and to protect students from the violation of their constitutional rights.

227.    Defendant Riverside and School District Defendants with supervisory and managerial roles had a duty to take sufficient remedial action to correct, eliminate, and/or prevent the unconstitutional acts and policies above.

228.    Defendant Riverside and School District Defendants with supervisory and managerial roles had a duty to implement procedures and policies for training, hiring, supervising, and educating Riverside employees in the detection, reporting, and investigation of alleged or suspected incidents of unconstitutional acts and misconduct, including abuse.

229.    Each and every named and unnamed Riverside employee was charged with monitoring G.B., to ensure he was safe at home.  Each and every named and unnamed Riverside employee fell far below the standard of care in fulfilling this duty.

230.    Defendant Riverside was responsible for establishing the duties and responsibilities of employees of Riverside.

231.    Defendant Riverside was responsible for the supervision and training of Riverside employees.

232.    Defendant Riverside was responsible for the supervision of Riverside employees' proper discharge of their duties.

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

233.    Defendant Riverside was responsible for the implementation of uniform policies and procedures governing employees of Riverside.

234.    Defendant Riverside was responsible for making and enforcing rules, regulations, and policies for the proper management of children placed in its care subject to Riverside's control, including G.B.

235.    Defendant Riverside was responsible for ensuring the constitutional rights of children placed in its care to be free from unnecessary harm from abuse, including G.B.

236.    Defendant Riverside has direct liability for the constitutional violations inflicted on G.B. in that the conduct complained of was Riverside's and the custom and practice of Riverside.

237.    Defendant Riverside and School District Defendants maintain a custom and practice of failing to keep children free from harm.

238.    Defendant Riverside and School District Defendants have a persistent and well-settled practice of unconstitutional misconduct by employees that was known and approved by Riverside and School District Defendants with supervisory roles.

239.    Each and every Riverside and School District Defendant was negligent.   In addition, these repeated acts of negligence sound in deliberate indifference.   Further, each and every Riverside and School District Defendant was deliberately indifferent, independent of their negligence.

240.    Defendant Riverside's and School District Defendants' custom and practice of unconstitutional misconduct was maintained with knowledge that said actions would deprive G.B. and others of their constitutional of right to be free from harm.

COMPLAINT - 38

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

241.    Defendant Riverside and School District Defendants violated the right of G.B. not to be handed over by state officers to a custodian whom Defendants knew and/or suspected to be a child abuser.

242.    The claims of Plaintiff herein, and the related injuries and damages, were the proximate result of the acts and omissions caused by Defendant Riverside and School District Defendants through their policies, practices, customs—including inadequate staffing, training, preparation, procedures, supervision, and discipline.

243.    Defendant Riverside's and School District Defendants' abdication of their duties toward G.B., as shown by their reckless indifference to the consequence of not reporting suspected abuse, shocks the conscience.

244.    Each and every Defendant—named and unnamed, entity and person—has violated G.B.'s constitutional Fourteenth Amendment due process right to be free from harm and wrongful death from an abusive person.

245.    The aforesaid acts and omissions of Defendants deprived G.B. of his constitutional rights; directly caused and/or directly contributed to his pain, suffering, and a general decline of his quality of life; directly caused and/or directly contributed to cause his death; and directly caused and/or directly contributed to cause his family to suffer pecuniary losses.

246.    Prior to death, G.B. suffered extreme physical and mental pain, terror, anxiety, suffering, and emotional distress.

247.    G.B.'s death was completely unnecessary and could have been easily prevented via provision of even the most rudimentary supervision.

248.    Defendant Riverside and School District Defendants breached each of the above duties.

COMPLAINT - 39

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

249.   Defendant Riverside and School District Defendants were negligent.

250.   Defendant Riverside and School District Defendants were deliberately indifferent.

251.   The above statements are not intended to be a full and comprehensive description of all of the information known and/or reported to Defendant Riverside and School District Defendants.

252.   The above factual statements are not a full description of the abuse suffered by, and harm inflicted upon, G.B.

## XI.    FIRST CAUSE OF ACTION – NEGLIGENCE
### (DSHS and DSHS Defendants)

253.   Defendant DSHS and its employees, each of them, owed a duty of care.  This duty included conducting reasonable investigations and taking appropriate action in response to reports, referrals, and suspicions of neglect and abuse and Khaleel's ability to safely care for G.B. and his siblings.

254.   DSHS and DSHS Defendants breached this duty by failing to reasonably investigate and take appropriate action in response to reports regarding G.B.'s safety and ability to care for G.B. safely.

255.   Reasonable investigations and appropriate action would have resulted in the removal of G.B. from the Khaleel home.  DSHS and DSHS Defendants, however, permitted G.B. to remain under the care of Khaleel, resulting in G.B.'s continued exposure to abuse, neglect, and ultimately death.

256.   As a direct and proximate cause of DSHS's and DSHS Defendants' negligence and fault, G.B. suffered severe damage.  This damage includes, but is not limited to, physical abuse, mental abuse, neglect, exposure to intolerable living conditions, and death.

COMPLAINT - 40

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

**XII.   SECOND CAUSE OF ACTION – VIOLATION OF 42 U.S.C. § 1983**
**(DSHS Defendants)**

257.    G.B. had a protected liberty interest in safe care and supervision.

258.    DSHS Defendants caused G.B. to be deprived of this protected liberty interest by directly participating in the depravation and/or creating a danger that G.B. would not have otherwise faced.

259.    In depriving G.B. of his protected liberty interest, DSHS Defendants acted with deliberate indifference by being aware of the facts from which an inference could be drawn that a substantial risk of serious harm existed, and actually drawing that inference, but ignoring G.B.'s risk of harm.

260.    In depriving G.B. of his protected liberty interest, DSHS Defendants acted with deliberate indifference because it was obvious that a substantial risk of serious harm existed, and they ignored that risk of harm.

261.    As a direct and proximate cause of DSHS Defendants' deprivation of G.B.'s protected liberty interest, G.B. has suffered severe damage, including, but not limited to, physical abuse, mental abuse, neglect, exposure to intolerable living conditions, and death.

262.    G.B.'s estate is entitled to an award of damages, including punitive damages against each DSHS Defendant, attorney's fees, and costs permitted under 42 U.S.C. § 1983.

**XIII.   THIRD CAUSE OF ACTION – VIOLATION OF 42 U.S.C. § 1983**
**(DSHS Defendants)**

263.    G.B. had a protected liberty interest in safe care and supervision.

264.    DSHS Defendants with supervisory and policy-making authority caused G.B. to be deprived of this protected liberty interest by imposing inadequate formal and informal policies—including, but not limited to, a lack of training, funding, and supervision—which placed children like G.B. at a substantial risk of harm.

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

265.   It was obvious that these policies would result in the harm caused to G.B., because numerous other children had been injured, abused, and/or killed as a result of these inadequacies in the past.

266.   As a direct and proximate result of the deliberate indifference of these DSHS Defendants, as described above and in other respects as well, G.B. died a terrible and easily preventable death.

267.   G.B. suffered pre-death pain, anxiety, terror, abuse, and neglect, before being brutally beaten to death.

## XIV.   FOURTH CAUSE OF ACTION – NEGLIGENCE
### (Riverside and School District Defendants)

268.   Defendant Riverside and its employees, School District Defendants, each of them, owed a duty of care.   This duty included conducting reasonable investigations and taking appropriate action in response to reports, referrals, and suspicions of neglect and abuse and Khaleel's ability to safely care for G.B. and his siblings.

269.   Riverside and School District Defendants breached this duty by failing to reasonably investigate and take appropriate action in response to suspected threats to G.B. and his sibling's safety.

270.   Riverside and School District Defendants with supervisory roles also were negligent in hiring, training, managing, supervising, and retaining their employees and managers. These School District Defendants knew or should have known of the acts and omissions of their employees and their reputation for such acts and omissions, but failed to take corrective action or otherwise protect G.B. from the acts and omissions of its employees.

271.   Reasonable investigations and appropriate action would have resulted in the removal of G.B. from the Khaleel home.   Riverside and School District Defendants, however,

COMPLAINT - 42

Galanda Broadman PLLC
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

caused G.B. to remain under the care of Khaleel, resulting in G.B.'s continued exposure to abuse, neglect, and ultimately death.

272.    As a direct and proximate cause of Riverside's and School District Defendants' negligence and fault, G.B. suffered severe damage.  This damage includes, but is not limited to, physical abuse, mental abuse, neglect, exposure to intolerable living conditions, and death.

### XV.    FIFTH CAUSE OF ACTION – VIOLATION OF 42 U.S.C. § 1983
### (School District Defendants)

273.    G.B. had a protected liberty interest in safe care and supervision.

274.    School District Defendants, each of them, caused G.B. to be deprived of this protected liberty interest by directly participating in the depravation and/or creating a danger that G.B. would not have otherwise faced.

275.    In depriving G.B. of his protected liberty interest, School District Defendants acted with deliberate indifference by being aware of the facts from which an inference could be drawn that a substantial risk of serious harm existed, and actually drawing that inference, but ignoring G.B.'s risk of harm.

276.    In depriving G.B. of his protected liberty interest, School District Defendants acted with deliberate indifference because it was obvious that a substantial risk of serious harm existed, and they ignored that risk of harm.

277.    As a direct and proximate cause of School District Defendants' deprivation of G.B.'s protected liberty interest, G.B. has suffered severe damage, including, but not limited to, physical abuse, mental abuse, neglect, exposure to intolerable living conditions, and death.

### XVI.   SIXTH CAUSE OF ACTION – VIOLATION OF 42 U.S.C. § 1983
### (Riverside)

278.    G.B. had a protected liberty interest in safe care and supervision.

COMPLAINT - 43

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

279.    Defendant Riverside caused G.B. to be deprived of this protected liberty interest by imposing inadequate formal and informal policies—including, but not limited to, a lack of training, supervision, and abuse-reporting procedures—which placed children like G.B. at a substantial risk of harm.

280.    It was obvious that these policies would result in the harm caused to G.B., yet Defendant Riverside approved of them and allowed them to endure.

281.    As a direct and proximate result of the deliberate indifference of Defendant Riverside, as described above and in other respects as well, G.B. died a terrible and easily preventable death.  He suffered pre-death pain, anxiety, and terror, neglect, and abuse before being brutally beaten to death.

## XV.    SEVENTH CAUSE OF ACTION – VIOLATION OF RCW 26.44.030
### (All Defendants)

282.    RCW 26.44.030 implies a cause of action against mandatory reporters, such as School District and DSHS Defendants, who fail to report suspected child abuse.

283.    School District and DSHS Defendants, each of them, (1) had personal knowledge of G.B.'s abuse and neglect, and/or (2) received a credible written or oral report alleging abuse and/or neglect.

284.    School District and DSHS Defendants, each of them, failed to report this information to the proper authorities.

285.    School District and DSHS Defendants, each of them, owed a duty to G.B. to comply with RCW 26.44.030.

286.    School District and DSHS Defendants, each of them, breached that duty.

287.    As a result of this breach, G.B. suffered severe damage, including, but not limited to, physical abuse, mental abuse, neglect, exposure to intolerable living conditions, and death.

COMPLAINT - 44

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

288.    The duty to report child abuse per RCW 26.44.030 was within School District and DSHS Defendants' scope of employment such that Riverside and DSHS are vicariously liable for its employees' violations of RCW 26.44.030.

289.    In addition, Riverside is directly liable for its promulgation and enforcement of policies that violate RCW 26.44.030.  Riverside had a duty to adopt policies that complied with RCW 26.44.030, but Riverside breached that duty, and G.B. was harmed as a direct result.

## XVI.   SEVENTH  CAUSE OF ACTION – OUTRAGE
### (All Defendants)

290.    Defendants' conduct was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

291.    Defendants' conduct was outrageous and extreme.

292.    Defendants' acts, as complained above, are intolerable in a civilized community.

## XVII.  JURY DEMAND

293.    Plaintiff hereby demands a jury.

## XVIII. PRAYER FOR RELIEF

294.    Damages have been suffered by Plaintiff and to the extent any state law limitations on such damages are purposed to exist, they are inconsistent with the compensatory, remedial and/or punitive purposes of 42 U.S.C. § 1983, and therefore any such alleged state law limitations must be disregarded in favor of permitting an award of the damages prayed for herein.

295.    WHEREFORE, Plaintiff requests a judgment against all Defendants:

(a) Fashioning an appropriate remedy and awarding general, special, and punitive damages under Washington State law and pursuant to 42 U.S.C. §§ 1983 and 1988, in an amount to be proven at trial;

COMPLAINT - 45

(b) Awarding reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, or as otherwise available under the law;

(c) Declaring Defendants jointly and severally liable;

(d) Awarding any and all applicable interest on the judgment; and

(e) Awarding such other and further relief as the Court deems just and proper.

DATED this 14th day of September, 2016.

GALANDA BROADMAN, PLLC

s/Gabriel S. Galanda
Gabriel S. Galanda, WSBA #30331
s/Ryan D. Dreveskracht
Ryan D. Dreveskracht, WSBA #42593
Attorneys for Plaintiff
P.O. Box 15146 Seattle, WA 98115
(206) 557-7509 Fax: (206) 299-7690
Email: gabe@galandabroadman.com
Email: ryan@galandabroadman.com

COMPLAINT - 46

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509